COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Elder
Argued at Richmond, Virginia


LAMONT EUGENE MCCORD
                                      MEMORANDUM OPINION[*] BY
v.         Record No. 1504-95-2        JUDGE LARRY G. ELDER
                                         AUGUST 6, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Thomas N. Nance, Judge


              Patricia P. Nagel, Assistant Public Defender
              (David J. Johnson, Public Defender, on
              brief), for appellant.

              Monica S. McElyea, Assistant Attorney General
              (James S. Gilmore, III, Attorney General, on
              brief), for appellee.



     Lamont Eugene McCord (appellant) appeals his convictions for

possession of cocaine with intent to distribute, in violation of

Code § 18.2-248; possession of cocaine while possessing a

firearm, in violation of Code § 18.2-308.4; and feloniously

carrying a firearm after having been convicted of a felony, in

violation of Code § 18.2-308.2.  Appellant argues that the trial

court erred in refusing to suppress drug and firearm evidence,

after determining that the police had reasonable suspicion to

seize him and then probable cause to arrest and search him.

Because the trial court did not err, we affirm appellant's

convictions.

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

The record reveals that on December 6, 1994, at approximately 8:00 p.m., Richmond City Police Officers John O'Kleasky and John O'Connor received information from their supervisor regarding a report of drug activity on Stafford Street in the City of Richmond. At approximately 8:55 p.m., the officers, in their police vehicle, turned onto Stafford Street, which was known to them as a "high drug area." The officers observed appellant from a distance of approximately 150 feet. Appellant, who stood in the middle of the street and held what looked like a bottle wrapped in a brown paper bag, was approximately forty feet from a car stopped along the curb. A female driver occupied the car, which was stopped in a bus stop. Appellant looked wide-eyed in the direction of the officers' vehicle and began "sprinting" toward the car.

The officers drove closer and stopped their vehicle in the middle of the street facing the car. As the officers exited their vehicle, they observed appellant enter the passenger side of the car and begin making furtive gestures. Officer O'Connor, fearing for his own safety, drew his weapon. As Officer O'Connor approached the passenger side of the car with his gun pointed at appellant, he yelled at appellant to put his hands where he could see them. Instead, appellant "would put [his hands] up and take them down and reach all around in his pockets," and onto the floor.

At the same time, Officer O'Kleasky approached the driver's

side of the car.  Officer O'Kleasky ordered the driver, who appeared jittery, to stop the car.  At this point, appellant, seated in the passenger seat, moved the gearshift into drive and then into reverse, while telling the driver to "go."

As appellant moved the gearshift, Officer O'Kleasky saw what he believed to be "narcotics" hanging out of appellant's pocket.  The officers then removed appellant from the car, arrested him, and seized drugs and a firearm from his person, found during the search incident to arrest.

Appellant moved to suppress the evidence seized, arguing that the police lacked even reasonable suspicion to detain him.  On May 3, 1995, the trial court overruled appellant's motion.  Appellant entered guilty pleas to the above-described charges on the condition that he could appeal the denial of his suppression motion, which is the subject of this appeal.

Upon appeal from a trial court's denial of a motion to suppress, we review the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  We will not disturb a trial court's findings unless "plainly wrong," id., and appellant bears the burden to show that the denial constituted reversible error.  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980).

We hold that the trial court did not err in finding that the

officers had reasonable, articulable suspicion to make a "Terry stop" of appellant. See Terry v. Ohio, 392 U.S. 1 (1968). The officers observed appellant holding what looked like a bottle in a brown paper bag. They observed appellant quickly flee to a nearby car, which was stopped at a bus stop. The officers also noticed appellant immediately begin to make furtive gestures as he entered the car. Considering the officers' experience and training, they reasonably suspected that appellant could have been drinking in public, that the car's driver was illegally parked at a bus stop, and that appellant fled to conceal his guilt. See Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833-34 (1990).

While the officers approached and stood along side the car, appellant continued to move around the inside of the car. Officer O'Kleasky noticed, in plain view, "narcotics" hanging out of appellant's pocket. At that juncture, the officers possessed probable cause to arrest appellant for possession of narcotics. See Texas v. Brown, 460 U.S. 730 (1983); Troncoso v. Commonwealth, 12 Va. App. 942, 407 S.E.2d 349 (1991). The officers lawfully removed appellant from the car and arrested and searched him, at which time they recovered the cocaine and the firearm. See Poindexter v. Commonwealth, 16 Va. App. 730, 734, 432 S.E.2d 527, 529-30 (1993).

Even assuming the officers lacked a basis for a Terry stop, according to California v. Hodari D., 499 U.S. 621, 626 (1991),

-4-

and its progeny, the officers never "seized" appellant because appellant did not submit to the officers' "show of authority." Brown v. Commonwealth, 17 Va. App. 694, 696, 440 S.E.2d 619, 620 (1994).  See Woodson v. Commonwealth, 245 Va. 401, 405, 429 S.E.2d 27, 29 (1993).

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.

Benton, J., dissenting.

To conduct a Terry detention, a police officer must have a "reasonable suspicion, based on objective facts, that the individual [detained] is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51 (1979). "If the officer's suspicion amounts to merely an 'inchoate and unparticularized suspicion or "hunch" . . . [rather] than a fair inference in light of his experience, [the officer's suspicion] is simply too slender a reed to support the seizure' under the fourth and fourteenth amendments of the United States Constitution." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989) (citation omitted). I would hold that McCord's conduct and the circumstances encountered by the officers did not support a Terry detention.

The majority concludes that the officers "suspected that [McCord] could have been drinking in public." The officers' bald suspicion falls short of the standard articulated in Terry v. Ohio, 393 U.S. 1 (1968). The testimony proved that McCord possessed "what appeared to be a bottle wrapped in a brown paper bag." The officers never observed McCord move the brown package to his mouth. Also, they did not know if the container had been opened or even if the bag contained an alcoholic beverage. Furthermore, the officers did not describe any conduct that would have led them to believe that McCord was intoxicated. Thus, the officers' own testimony proved that the seizure was based only

–6–

upon an "inchoate and unparticularized suspicion or 'hunch'" concerning McCord's use or intended use of the lawful item McCord possessed. Terry, 392 U.S. at 27.

In addition, the officers' testimony established that the driver of the automobile was not violating any traffic laws. The driver was in the automobile with the engine running. That conduct was not unlawful. Although the City of Richmond prohibits parking or stopping at a bus stop, the city code does allow brief stops to load or unload passengers. Richmond City Code § 28-220. The evidence proved that the officers seized McCord and the driver only a few seconds after first observing the vehicle. Viewed objectively, I cannot find that there was a reasonable suspicion that the driver was engaged in criminal activity simply because she stopped at a bus stop for a few seconds. "Under the circumstances of this case, such conduct, viewed either in isolation as the officer considered it or along with the other behavior as the court must examine it, is utterly insufficient to generate a reasonable suspicion that [McCord] was involved in criminal activity." Zimmerman v. Commonwealth, 234 Va. 609, 612, 363 S.E.2d 708, 710 (1988).

Contrary to the majority's alternative finding, the trial judge found that the police officer had seized McCord. Based upon the testimony, the trial judge ruled as follows:

> And when the lady was commanded to stop, I think you can consider that a seizure of both people. You can further consider the officer when he gets to the side of the vehicle and . . . when Officer O'Connor issues the

> command to stop with his gun in his hand; and
> the man doesn't jump out and run, I think you
> could probably consider that a seizure, also.

That finding disposes of the suggestion that <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991), renders this encounter to be not a seizure.

For these reasons, I would hold that the trial judge erred in not suppressing the evidence.