UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Senior Judge Haley
Argued by videoconference


WHITNEY ALLEN BARKER

                                          MEMORANDUM OPINION* BY
v.        Record No. 0514-21-2          JUDGE DORIS HENDERSON CAUSEY
                                            SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge[1]

John S. Koehler (The Law Office of James Steele, PLLC, on brief),
for appellant.

David M. Uberman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Whitney Allen Barker, appellant, challenges his conviction for possession of a firearm while

in possession of a Schedule I or II controlled substance.  On appeal, he argues that the trial court

erred by denying his motion to suppress evidence obtained during a search of his residence pursuant

to a warrant.  He contends that the court erred by finding that the police "had a good faith belief that

the warrant was valid" under *United States v. Leon*, 468 U.S. 897 (1984).  Appellant also asserts

that even if the police did have a good-faith belief in the validity of the warrant, the court still should

have suppressed the evidence because "the search warrant was also deficient on other grounds."

For the reasons below, we hold that the trial court did not err and affirm its decision.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Kimberley S. White presided over the proceedings below.  Now a member of this Court, Judge White took no part in this decision.

# I. BACKGROUND[2]

In early August 2019, a Halifax County sheriff's investigator applied to a magistrate for a search warrant for a residence in Nathalie, Virginia. The affidavit identified the place to be searched as a "residence at 5013 Stage Coach Road" and the "curtilage, outbuilding and the physical property located at" that address. The objects of the search consisted of "[a]ll things related to the growing of [m]arijuana," including, but not limited to, marijuana plants and seeds, fertilizer, water hoses, gardening tools, and "literature on how to grow marijuana." The affidavit further listed cell phones belonging to appellant, scales, packaging material, ledgers of sales, and "grow notes" among the items sought.

According to the recitation of the material facts of probable cause to support the search, the day before filing the application, another investigator informed the applying officer of a conversation with a "confidential source of information." The informant claimed to see "marijuana plant(s) in buckets in a garden along Stage Coach Road." The informant added that he had seen appellant "tending to the garden." The police were "familiar with" appellant and the garden, and knew the garden was on property owned by appellant's parents. Despite this preexisting knowledge, the officers identified the property and location of the garden on Google Earth.

The applying officer stated in the affidavit that he drove to the location to verify the tip-off. He "saw what he knew from his training and experience to be a marijuana plant growing in the garden alongside other garden plants." The next day, he returned to the garden and

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

collected a sample from the plant. The sample was "consistent with other marijuana plants" he had seen and collected from other grow sites. The officer noted that appellant resided "on the same property as the garden and within walking distance." The garden was "well maintained" with "few weeds," and "the suspected marijuana plant appeared to be healthy and growing well."

In the affidavit, the officer explained that through his training and experience, he knew "that persons growing marijuana tend to store the tools and related peripherals used in the cultivation of marijuana in both their residence as well [as] other buildings on the curtilage of the residence." He stated that "[p]ersons growing marijuana are most often users of marijuana and, therefore, they bring marijuana back to their residence to smoke as well as to package the marijuana for storage for future use or sale." Finally, he remarked that marijuana growers often use "electronic devices to research information on the internet related to the growing process." The affidavit identified Code § 18.2-248—which forbids manufacturing, selling, giving, distributing, or possessing with intent to manufacture, sell, give, or distribute a controlled substance—as the suspected offense.[3]

The magistrate issued the warrant authorizing a search of the residence for "[e]vidence of the growing of marijuana, including but not limited to marijuana plants, marijuana seeds, fertilizer, water hoses, gardening tools, . . . literature on how to grow marijuana[,] [c]ellular telephones belonging to [appellant,] [s]cales, packaging materials, ledgers of sales, [and] ledge[r]s of grow notes." The warrant identified Code § 18.2-248 as the suspected offense.

When the affiant-officer, accompanied by other members of law enforcement, executed the warrant the next day, they found "marijuana throughout the residence," along with grinders,

---

[3] Code § 18.2-248 is entitled "Manufacturing, selling, giving, distributing, or possessing with intent to manufacture, sell, give, or distribute a controlled substance or an imitation controlled substance prohibited; penalties." Marijuana is not a Schedule I or II controlled substance, and thus this code section does not pertain to marijuana. *See* §§ 54.1-3446 and 54.1-3447.

scales, small marijuana plants, grow lights, and smoking devices. In the house, they found three firearms in plain view and a fourth firearm in a nightstand drawer beside appellant's bed. In the same drawer, they also found twenty-eight amphetamine pills. Appellant was present throughout the execution of the search warrant, and, after the search, he was immediately taken into custody. Appellant was charged with possession of a firearm while in possession of a Schedule I or II controlled substance in violation of Code § 18.2-308.4(A).[4]

In January 2020, appellant was indicted for possession of a firearm while in possession of a Schedule I or II controlled substance in violation of Code § 18.2-308.4(A). At trial, appellant admitted that he lived at 5013 Stage Coach Road and had been growing marijuana to treat his various health issues. In his motion to suppress, however, he argued that the search warrant was invalid for three reasons.[5] He first asserted that the allegations in the affidavit failed to establish a nexus between his residence and the garden. He next contended that the probable cause statement in the affidavit did not identify his address. Finally, appellant noted that Code § 18.2-248 pertains only to the distribution of a controlled substance rather than marijuana possession. He argued that the discrepancy between the purported violation in the search warrant application, for possession of a controlled substance, and the statements of probable cause in the affidavit, alleging possession of marijuana—a noncontrolled substance, rendered the warrant defective and that the good-faith reliance exception established in *Leon* did not apply.

---

[4] Appellant was also charged with possession of a Schedule II controlled substance, in violation of Code § 18.2-250(A)(a), possession of a Schedule I controlled substance, in violation of Code § 18.2-250(A)(a), possession of marijuana, in violation of Code § 18.2-250.1, possession of a Schedule IV controlled substance, in violation of Code § 18.2-250(A)(b1), and two counts of contributing to the delinquency of a minor, in violation of Code § 18.2-371. He did not appeal those charges.

[5] Appellant's motion to suppress listed two other issues that he withdrew at the start of the motion hearing.

After the motion hearing, the trial court held that the totality of the circumstances established probable cause to issue the warrant. The court further held that the fact that appellant's address was not listed in the probable cause section was immaterial because the address was specifically stated in the first section of the affidavit.

The trial court determined, however, that the magistrate made a "big mistake" by citing Code § 18.2-248 as the alleged offense. The court found that there was "not one ounce of evidence" of an intent to distribute a controlled substance and no probable cause to issue a search warrant for a violation of Code § 18.2-248.

Despite the defective warrant, the court found that the good-faith exception to the exclusionary rule applied because it was "exceedingly clear in reading this affidavit . . . that in no way, shape, or form did law enforcement believe they were seeking a warrant for controlled substances" under Code § 18.2-248. They instead believed "they were going after evidence for a marijuana grow operation." The trial court denied appellant's motion to suppress and later, based on the evidence recovered from the execution of the search warrant at issue, convicted appellant of possession of a firearm while in possession of a Schedule I or II controlled substance.[6] This appeal follows.

## II. ANALYSIS

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020).

---

[6] The court also "found the evidence sufficient to find [appellant] guilty of [possession of amphetamine in violation of Code § 18.2-250(A)(a)] and [possession of marijuana in violation of Code § 18.2-250.1,] but [withheld] a finding of guilt . . . and continue[d] the case until June 2, 2022." Appellant concedes that the seized evidence "is sufficient to establish that he was in constructive possession of both the weapon and the controlled substance found in the home where he was then residing."

A search conducted "pursuant to a warrant issued by a magistrate" is presumed to be valid. *Felton v. Commonwealth*, 56 Va. App. 43, 48 (2010). "[W]here the police conduct a search pursuant to a judicially sanctioned warrant, the defendant must rebut the presumption of validity by proving that the warrant is illegal or invalid." *Lebedun v. Commonwealth*, 27 Va. App. 697, 711 (1998). "[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." *King v. Commonwealth*, 49 Va. App. 717, 721 (2006). In conducting our review, we are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence," but we review "the trial court's application of the law de novo." *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008). This deferential review of the facts requires us "to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id*. at 169 (quoting *Reittinger v. Commonwealth*, 260 Va. 232, 236 (2000)).

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Adams v. Commonwealth*, 275 Va. 260, 273-74 (2008) (quoting *Leon*, 468 U.S. at 922). "An officer . . . is not required to go behind a magistrate's probable cause determination to ascertain whether probable cause actually existed." *Id.* at 274. "The 'good-faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* at 268 (quoting *Leon*, 468 U.S. at 922 n.23).

The good-faith exception does not apply in four circumstances:

> (1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable

- 6 -

cause" as to render official belief in its existence unreasonable, or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

*Lane v. Commonwealth*, 51 Va. App. 565, 572 (2008) (quoting *Cunningham v. Commonwealth*, 49 Va. App. 605, 618 (2007)).

Courts in the Commonwealth have not squarely addressed judicial abandonment and *Leon* does not provide a clear definition. The federal circuit, however, has articulated convincing guidance on the issue. According to the Ninth Circuit, judicial abandonment may exist if "(1) the magistrate was biased against the defendant or otherwise personally interested in issuing the warrant; (2) the magistrate functionally occupied a different, non-neutral role while making the probable cause determination; or (3) the magistrate failed to review the requisite affidavits or material prior to making a probable cause determination." *United States v. Barnes*, 895 F.3d 1194, 1202 (9th Cir. 2018).[7]

"[I]t is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good-faith' reliance." *Anzualda v. Commonwealth*, 44 Va. App. 764, 781 (2005) (*en banc*) (quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)). Thus, if

_____

[7] *See also Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327 (1979) (finding judicial abandonment when the magistrate "allowed himself to become a member, if not the leader, of the search party which was essentially a police operation"); *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005) (holding appellant's assertion that the magistrate "issued the warrant without reading the affidavit" was unsupported by the record, and thus the magistrate did not abandon his judicial role); *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002) (holding that there was no evidence of judicial abandonment because there was no evidence that the judge failed to read the affidavit before signing the warrant); *United States v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002) ("It is clear to us that a magistrate judge should read the warrant and make his own independent assessment as to whether the warrant and its underlying affidavit contain a sufficient amount of information to support a finding of probable cause. A judge can be said to act as a mere 'rubber stamp' if he solely relies upon the fact that police officers are asking for the warrant."); *United States v. Mueller*, 902 F.2d 336, 340 (5th Cir. 1990) ("Nothing suggests that the magistrate had any bias or interest in issuing the warrant, or that he dispensed with his neutral and detached position to become involved in the evidence-gathering related to issuance of the warrant as did the town justice in *Lo-Ji Sales*.").

there is "*some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception as long as a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed that the warrant was valid." *Id.* A defective warrant may be sufficient indicia of probable cause if it was not based on a mere "bare bones affidavit" but "contained a detailed description of the nature of the offense, the premises to be searched, [and] the items for which they were searching[.]" *Atkins v. Commonwealth*, 9 Va. App. 462, 464 (1990).

"[S]earch warrants 'are normally drafted by non-lawyers in the midst and haste of a criminal investigation.'" *Drumheller v. Commonwealth*, 223 Va. 695, 698 (1982) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Collins v. Commonwealth*, 297 Va. 207, 215 (2019) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). The exclusion of evidence is a "'last resort' remedy" employed "only when necessary 'to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.'" *Id.* (quoting *Herring*, 555 U.S. at 140, 144). In deciding whether this conduct is "deliberate," we "focus . . . on the 'flagrancy of the police misconduct' at issue." *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).

Here, assuming, without deciding, that the warrant was defective, there is sufficient evidence in the record to support the trial court's conclusion that the good-faith reliance exception applied. None of the circumstances making reliance unreasonable are present. As appellant concedes, nothing in the record suggests the police misled the magistrate. The magistrate's failure to correct the code section in the warrant was not abandonment of his judicial role. The affidavit is not so lacking in probable cause as to render its existence

unreasonably believable. Finally, the warrant was not so facially deficient that an executing officer could not reasonably have assumed it valid.

Appellant asserts that the magistrate's failure to correct the code section cited in the warrant amounts to abandonment of his judicial role. Because the magistrate issued a warrant citing an offense incompatible with the allegations of probable cause, appellant contends the magistrate "act[ed] as a 'rubber stamp' for law enforcement" rather than "as a neutral and detached judicial officer protecting the rights of citizens against the power of government." The record, however, does not support this claim.

The affidavit supporting the search of appellant's property details the events that instigated police suspicion of his involvement in a marijuana grow operation. The affidavit also describes investigative measures the police pursued which furthered their suspicion. The affidavit provides, with specificity, the location, and items to be searched. But for its reference to an incompatible section of the Code, the warrant is valid. Code § 18.2-248 refers to the manufacture and distribution of controlled substances. In contrast, Code § 18.2-248.1 relates to possession and distribution of marijuana.[8] The logical conclusion is that the code citation was a drafting error that the magistrate overlooked. This shortcoming cannot reasonably suggest total abandonment of the magistrate's judicial role. "A showing that the magistrate abandoned the role of a neutral and detached judicial officer requires more than inadequacy of the affidavit." *Sowers v. Commonwealth*, 49 Va. App. 588, 603 (2007). Because there is no evidence the magistrate was biased, failed to read the warrant, or otherwise engaged in behavior tantamount to abandonment of his judicial role, we reject appellant's argument.[9]

---

[8] Code § 18.2-248.1 is entitled "Penalties for sale, gift, distribution or possession with intent to sell, give or distribute marijuana."

[9] Even if the magistrate did abandon his role, however, suppression would unlikely be the appropriate remedy. *See Arizona v. Evans*, 514 U.S. 1, 11 (1995) ("Where the exclusionary rule

Appellant's next contention is that "on its face[,] the warrant was [so] lacking in sufficient indicia of probable cause that the officers executing the warrant, including [the] original applicant, should not have been able to rely upon it." He asserts that the lack of a "nexus between the allegation of probable cause and the alleged illicit activity" rendered the warrant obviously deficient. We reject appellant's argument and hold the trial court's decision was reasonable because there is evidence in the record to support a conclusion that the warrant contained sufficient probable cause for good-faith reliance.

The alleged violation of the code section cited on the face of the warrant did not match the conduct alleged in the supporting affidavit. Assuming this deficiency rendered the warrant defective, however, the affidavit still described allegations that, if proven, amounted to probable cause of illegal activity. *See Atkins*, 9 Va. App. at 464. The police confirmed the location of the marijuana via Google Earth, drove to the location to verify the tip-off, observed the marijuana plant themselves, and sampled and tested the marijuana to a positive result. These allegations were detailed and the result of an apparently thorough investigation. Subsequent belief in the validity of the warrant, therefore, was not unreasonable. "To hold otherwise would require

---

does not result in appreciable deterrence, then, clearly, its use is unwarranted."). Evidence seized under a warrant should be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Lane*, 51 Va. App. at 572 (quoting *Leon*, 468 U.S. at 916).

The Fifth, Sixth, Ninth, and Tenth Circuits have concluded that the exclusionary rule only applies to instances of judicial abandonment if the police knew or should have known of the abandonment. *See, e.g.*, *United States v. Villanueva*, 821 F.3d 1226, 1235 (10th Cir. 2016) (applying the good-faith exception because the defendant did not "set forth any evidence or argument" that the officer "could have, or should have, reasonably known about any alleged bias the issuing judge might have had"); *United States v. Rodriguez-Suazo*, 346 F.3d 637, 649 (6th Cir. 2003) ("Because the focus of this [exclusionary] rule is to prevent police misconduct, exclusion should be ordered only if the police officer knew . . . that the magistrate abandoned his or her neutral and detached function."); *United States v. Breckenridge*, 782 F.2d 1317, 1321-22 (5th Cir. 1986) (declining to suppress the evidence because the judge appeared to both officers to have "fulfilled his duty to act as a 'neutral and detached' magistrate"). We agree with the rationale behind these holdings.

police officers to possess the skills and understanding of a trained lawyer and further require them to go behind a magistrate's determination of probable cause and make their own decision as to whether probable cause in fact exists." *Adams*, 275 Va. at 274. Accordingly, we reject appellant's argument that the affidavit had insufficient indicia of probable cause for the police to rely on it in good faith.

Appellant's last argument under this assignment of error is that "no reasonable officer could have believed that evidence of marijuana cultivation was relevant to establishing the illegal manufacture or distribution of Schedule I or II controlled substances." We hold that this argument has no merit and that the warrant was not facially deficient enough to preclude a reasonable presumption of validity.

The totality of the circumstances fully supports the trial court's finding that the executing officers acted in good faith. When read in context with the rest of the document, the referenced code section appears to be a clerical error that the magistrate did not notice, as discussed above. Also discussed above, the rest of the document described allegations that amounted to probable cause of illegal activity. Appellant does not assert law enforcement misconduct that would properly implicate the exclusionary rule.[10] Further, nothing in the record suggests the executing officers, who are not trained attorneys, "knew or should have reasonably known that their reliance on the warrant was objectively unreasonable." *Ward v. Commonwealth*, 273 Va. 211, 218 (2007). Accordingly, we reject appellant's argument that the warrant was facially deficient enough to preclude a reasonable presumption of its validity.

---

[10] *See supra*, p. 8 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Collins v. Commonwealth*, 297 Va. 207, 215 (2019) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009))).

None of the circumstances precluding an objectively reasonable belief that the warrant was supported by probable cause are present in this case. We therefore hold that the trial court did not err in applying the good-faith exception and denying the suppression motion.

Appellant alleges other deficiencies in the search warrant, including claims that the confidential informant's reliability was reasonably in doubt and that the affidavit did not sufficiently connect the alleged crime to the appellant's property. Appellant argues that, taken as a whole, the application did not present sufficient evidence of probable cause that he was cultivating marijuana on his property for distribution. But because we hold that the good-faith exception to the exclusionary rule applies here, we do not reach appellant's remaining arguments.

The good-faith exception works as a buffer, separating honest mistakes from illegal conduct. Because "the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, *e.g., Leon*, 468 U.S.[ ] at 909-10," the United States Supreme Court has "conclude[d] that when police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" *Herring*, 555 U.S. at 147-48 (quoting *Leon*, 468 U.S. at 907-08 n.6). Thus, because we hold that the police "had a good faith belief that the warrant was valid" under *Leon*, 468 U.S. at 897, and an objectively reasonable belief that the warrant was supported by probable cause, we also hold that exclusion is not appropriate based on the search warrant being defective. We therefore do not consider appellant's alternative arguments about the validity of the warrant.

### III. CONCLUSION

For all these reasons, we find that the trial court did not err in applying the good-faith reliance exception to the exclusionary rule and denying appellant's motion to suppress.

*Affirmed.*

- 12 -